[Cite as *In re E.L.B.*, 2025-Ohio-118.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

IN THE MATTER OF: E.L.B.

:
:
:    C.A. No. 2024-CA-64
:
:    Trial Court Case No. 2022-C-00068-0D
:
:    (Appeal from Common Pleas Court-
:    Juvenile Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on January 17, 2025

. . . . . . . . . . .

KELLY M. SCHROEDER, Attorney for Appellant

MEGAN A. HAMMOND, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Mother appeals from a judgment of the Greene County Court of Common Pleas, Juvenile Division, which terminated her parental rights and awarded Greene County Children Services ("GCCS") permanent custody of her child, E.L.B. Mother contends the court erred by finding that an award of permanent custody was in the child's

best interest.

{¶ 2} Because a review of the record shows clear and convincing evidence that E.L.B. had been in the temporary custody of GCCS for 12 or more months out of a consecutive 22-month period and that an award of permanent custody to GCCS was in E.L.B.'s best interest, we affirm.

## I.     Factual and Procedural History

{¶ 3} E.L.B. was born in September 2022.   At the time, Mother was residing with a man, "Adam," who was believed to be the child's father.[1]   On September 13, 2022, GCCS received a report that Adam was abusing drugs and alcohol in the home and had acted violently while doing so.   After Adam refused a requested drug screen, GCCS implemented a safety plan requiring him to leave the home.   However, on October 19, 2022, Adam was arrested at the home after he held a gun to his head and threatened to kill himself.   That same day, GCCS tried to find a placement out of the home as a safety plan for the child.   However, when no options were identified, Mother signed an agreement to place the child in foster care.

{¶ 4} On November 9, 2022, GCCS filed a complaint alleging that E.L.B. was a dependent child.   Following a hearing, the child was adjudicated dependent.   The court awarded GCCS temporary custody on January 3, 2023.

{¶ 5} A first extension of temporary custody was granted on October 9, 2023, at which time the trial court made a finding that Mother had abandoned the child.   The

---

[1] DNA testing later established that Adam was not the child's biological father.

finding was based on Mother's failure to attend any visitation after June 30, 2023. A second extension of temporary custody was granted on April 15, 2024.

{¶ 6} On May 2, 2024, GCCS filed a motion for permanent custody. A hearing was conducted in August 2024. Thereafter, the trial court entered a judgment awarding permanent custody to GCCS. Mother appeals.[2]

## II. Analysis

{¶ 7} Mother's sole assignment of error states:

THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY

TO THE AGENCY SHOULD BE REVERSED BECAUSE IT WAS NOT IN

THE CHILD'S BEST INTEREST.

{¶ 8} Mother contends the trial court's finding that awarding permanent custody to GCCS was in the best interest of the child was not supported by the evidence.

{¶ 9} A juvenile court's decision to terminate parental rights and grant permanent custody to an agency of the State must be supported by clear and convincing evidence. *In re L.C.*, 2011-Ohio-2066, ¶ 14 (2d Dist.). Clear and convincing evidence is evidence which will produce in the mind of the trier of fact "a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). The evidence must be more than a preponderance, but it need not rise to the level of certainty that is required beyond a reasonable doubt in criminal cases. *Id.*

{¶ 10} In reviewing a permanent custody decision, "we apply an abuse-of-

---

[2] The biological father, who was identified while the juvenile case was pending, is not a party to this appeal.

discretion standard, and we will not disturb such a decision on evidentiary grounds 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.' " *In re T.S.*, 2017-Ohio-482, ¶ 6 (2d Dist.), citing *In re L.C.* at ¶ 14. The phrase "abuse of discretion" implies a decision which is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 11} R.C. 2151.414(B)(1) establishes the following two-part test for courts to apply when determining a motion for permanent custody to a public children services agency:

Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was

previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 12} Here the juvenile court made the findings required to award GCCS permanent custody. Specifically, the court found that E.L.B. had been in the custody of GCCS for 12 or more months of a consecutive 22-month period and that awarding permanent custody to MCCS was in the child's best interest. Mother does not dispute

the 12-out-of-22-month finding.   However, she does claim that the court erred in finding that the child's best interest required a grant of permanent custody to the agency.

{¶ 13} R.C. 2151.414(D)(1), which sets forth the factors a court must consider when determining whether granting permanent custody to a public children's services agency is in the best interest of the child, states:

In determining the best interest of a child at a hearing held pursuant to division (A) of this section . . . , the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period . . . ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 14} Here, there was competent evidence supporting the trial court's finding that it was in the best interest of the child to grant permanent custody to GCCS. The record demonstrates that E.L.B. was bonded and thriving with her foster family, with whom she had been placed one month after her birth. She had no relationship with her father. Mother had been sporadic, at best, in attending visitation with the child. Indeed, Mother failed to visit the child for a six-month period from June 2023 until January 2024. Even after visits were reinstated, Mother failed to attend numerous visits.

{¶ 15} Although the child was too young to express her wishes, the court appointed special advocate assigned to her case recommended that GCCS receive permanent custody.

{¶ 16} The child had been in the custody of GCCS since her removal from the home at approximately one month of age. At the time of the permanent custody hearing, the child was two-years old. The record supported a finding that the child was in need of a legally secure placement and that such a placement could not be achieved without a grant of custody to GCCS. There was also evidence in the record that Mother had failed to comply with her case plan. At the time of the hearing, she was unemployed, and she had failed to engage in mental health services or parenting classes as required by her case plan. More concerning, she continued to live with Adam. Indeed, she indicated that she valued her relationship with Adam over her relationship with E.L.B.

{¶ 17} Based upon the record before us, we conclude that there was clear and convincing evidence supporting the trial court's decision to award permanent custody to GCCS. Accordingly, the assignment of error is overruled.

### III.     Conclusion

{¶ 18} Mother's sole assignment of error being overruled, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . . .


EPLEY, P.J. and HUFFMAN, J., concur.